Robyn **MASINGILL**, Plaintiff,

v.

**STATE OF ARKANSAS, Steve Clark, Attorney General; Tom Tatum, Prosecuting Attorney, and Charles Eddy, Circuit Judge, Defendants.**

No. LR-C-82-450.

United States District Court, E. D. Arkansas, W. D.

June 23, 1982.

Tom Donovan, Dardanelle, Ark., for plaintiff.

## ORDER

ROY, District Judge.

At a trial in the Circuit Court of Conway County, Arkansas, on December 14, 1981, the plaintiff was found guilty by a jury of a misdemeanor but the jury was unable to reach a verdict on two felony charges and a mistrial was declared by defendant, Charles Eddy, Circuit Judge. The retrial of the two felony counts is scheduled for June 28, 1982. The plaintiff has filed this action asking this Court to enjoin the defendants from re-trying him until the transcript of his first trial has been prepared and made available to him for a reasonable time and until the Arkansas appellate courts have rendered decisions on various allegations of errors committed during his first trial. He alleges potential violations of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and that he will be irreparably harmed if this Court does not issue a Temporary Restraining Order.

Because of the very short time remaining before his retrial and because the legal principles on this subject are quite clear, neither a hearing nor a written response from the defendants is necessary for a determination of this matter.

This Court is extremely reluctant to impose its authority upon a state court judge and prosecuting attorney who are attempting to perform their duties by trying a person charged with criminal violations of Arkansas law. Before this Court would ever consider such an imposition the plaintiff would have to show not only that he would suffer irreparable harm, but also that such harm would be both great and immediate.

Plaintiff's mere assertion that he is to be tried and may be convicted in a manner that would violate rights guaranteed by the United States Constitution is not sufficient to justify the extreme remedy which he requests. The United States Supreme Court has prevented federal courts from intervening in state criminal proceedings to suppress the use of evidence even when it was claimed to have been obtained in violation of the defendant's rights. *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

The Supreme Court has also refused to invoke federal jurisdiction where a state criminal defendant sought injunctive relief alleging that he had been illegally coerced to testify before a grand jury by the prosecutor and members of the New Jersey Supreme Court and it was, therefore, impossible for him to receive a fair trial in that state's courts. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).

The clearest exposition of the abstention doctrine which is controlling in this case was enunciated by the Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), where the Supreme Court held that even if the California statute under which the defendant was to be prosecuted was unconstitutional, he was not entitled to federal equitable relief absent a showing of extraordinary circumstances, where the danger of irreparable harm was both great and immediate.

The following excerpts from that landmark opinion are informative on this issue:

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.... This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for

state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." ... What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* supra, at pages 43 and 44, 91 S.Ct. at page 750.

If the plaintiff, Robyn Masingill, is convicted and believes that the absence of a transcript of his first trial was so prejudicial that the conviction violated his rights under the Federal Constitution, then he can appeal that conviction at that time. It may be that even federal habeas corpus relief will be sought after exhaustion of his state remedies, but all of that must commence after the trial and not before.

This Court finds that the plaintiff has failed to meet the test as set forth in *Younger,* supra, in that the facts as alleged are not sufficient to justify such a drastic departure from the established doctrines regarding the availability of injunctive relief against a state criminal prosecution. Therefore,

IT IS CONSIDERED, ORDERED AND ADJUDGED:

That the plaintiff's request for a temporary restraining order and a preliminary injunction are denied and his complaint is dismissed with prejudice.